**Dwayne WALKER, Plaintiff–Appellant,**

v.

**Dr. Ronald SHANSKY, Dr. Gandhy, Dr. R. Shroff, and Dr. Mark Carise, et al., Defendants–Appellees.**

Nos. 90–2732, 91–1870.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1994.

Decided July 1, 1994.

---

Jerold S. Solovy, David C. Bohan, Andrew M. Jacobs (argued), Jenner & Block, Chicago, IL, John J. Kurowski, Kurowski & Courtney, Swansea, IL, for plaintiff-appellant.

Susan Frederick Rhodes, Asst. Atty. Gen. (argued), Karen Michels Caille, Asst. Atty. Gen., Civ. Appeals Div., Chicago, IL, for defendants-appellees.

Before FAIRCHILD, CUMMINGS, and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Dwayne Walker, a prisoner in Centralia (Illinois) Correctional Center, filed two lawsuits against various medical and prison officials, alleging that his constitutional rights were violated by two forced injections of tranquilizing drugs and by his assignment to long-term segregation. In the first lawsuit, the defendants prevailed on summary judgment. After dismissing four defendants from the second lawsuit, the court below entered summary judgment against Walker and in favor of the remaining defendants. The two cases have been consolidated for purposes of appeal. We affirm in part and reverse in part.

I.

During the relevant period, Walker was an inmate at the Centralia Correctional Center ("Centralia"). Walker suffers from several physical ailments, including hemophilia, avascular necrosis of the right hip, and a partially fused right ankle. Doctors have also diagnosed Walker as suffering from a borderline personality disorder which causes psychotic episodes and intermittent explosive behavior. As a result of his mental illness, Walker tried to dictate the terms of his medical treatment. He often refused to be treated as the physicians prescribed and instead requested large dosages of highly addictive pain medication. Attempts to control his outbursts through counseling and psychotherapy proved unavailing. Prison officials maintain that because of his medical problems, Walker was kept in isolation, segregated from the general prison population.

On April 8, 1988, in protest of what was, in his view, inadequate medical attention, Walker persisted in cursing and threatening prison staff and doctors. When medical personnel attempted to attend to him in his cell, Walker refused treatment. Walker then began urinating and defecating on the floor of the cell and smearing his feces on the walls and floor. Unamused by this artistic display, prison officials subdued Walker, strapped

him into a wheelchair, and took him to the prison medical unit where he was introduced to Dr. Pravin Gandhy, a consulting psychiatrist at Centralia. Still in leather restraints, Walker continued to behave abusively and to thrash about. In Dr. Gandhy's opinion, Walker's behavior posed a threat to others and, due to his condition as a hemophiliac, to Walker himself. Dr. Gandhy recommended to Centralia Medical Director, Dr. Rajendra Shroff and to Centralia Warden, J. Ronald Haws that Walker be administered an injection of Haldol as a means of averting imminent injury.[1] Dr. Gandhy also informed Dr. Shroff and Haws that Walker was incapable of consenting to the medication. Based on Dr. Gandhy's recommendations, in which Dr. Shroff concurred, Haws signed an Emergency Waiver of Consent Form as required under Illinois law.[2] Subsequently, Walker was administered a dose of Haldol along with a dose of Cogentin to counter any side effects. In his first lawsuit (*Walker I*), Walker alleged that this administration of Haldol was a violation of the Eighth Amendment's prohibition against cruel and unusual punishment and that the failure to properly conform with the dictates of 730 ILCS 5/3–6–2(e) was a violation of due process under the Fourteenth Amendment.

Walker's second lawsuit (*Walker II*) stemmed largely from events which transpired on August 10, 1988. On that day, Walker again began to engage in destructive and abusive behavior within his cell, hurling feces at prison officials and going so far as to start a flood in his cell. Wary of the damage which physical restraint might inflict on a hemophiliac and because the prior Haldol

injection had been successful in subduing Walker, Dr. Gandhy recommended that another dosage be administered. Dr. Gandhy again requested that an Emergency Consent Waiver be granted. Haws obliged and Walker was administered another dose of Haldol and Cogentin. As in *Walker I*, Walker alleged that his constitutional rights under the Eighth and Fourteenth Amendments were violated by the forced administration of Haldol. In addition, Walker asserted that his placement in segregation for the ten months he was at Centralia was also a violation of his Eighth Amendment and Fourteenth Amendment rights.

In both *Walker I* and *Walker II*, the parties waived their rights to proceed before a United States District Judge, agreeing instead to entry of judgment by United States Magistrate Judge Gerald Cohn. Finding that both administrations of Haldol were compelled by medical emergencies and that placement of Walker in segregation was justified by his health, Magistrate Judge Cohn entered summary judgment in favor of the defendants.

## II.

On appeal, Walker makes three arguments for reversal of the decisions below. He first contends that his Eighth Amendment claims based on the Haldol injections were erroneously resolved because there was a genuine issue of fact as to whether a medical emergency existed before each injection and as to whether Walker suffered from a borderline personality disorder. Second, he claims that

---

1. Haldol is a tranquilizer used to treat schizophrenia as well as other psychotic mental disorders. By altering the chemicals of a patient's brain, it helps the patient to organize his or her thought processes and to regain rationality. *Sullivan v. Flannigan*, 8 F.3d 591, 592 n. 1 (7th Cir.1993).

2. The relevant Illinois statute provides:
   A person committed to the Department who becomes in need of medical or surgical treatment but is incapable of consent thereto shall receive such medical or surgical treatment by the chief administrative officer consenting on the person's behalf. Before the chief administrative officer consents, he or she shall obtain the advice of one or more physicians licensed

to practice medicine in all its branches in this State. If such physician or physicians advise:
(1) that immediate medical or surgical treatment is required relative to a condition threatening to cause death, damage, or impairment to bodily functions, or disfigurement; and
(2) that the person is not capable of giving consent to such treatment; the chief administrative officer may give consent for such medical or surgical treatment, and such consent shall be deemed to be the consent of the person for all purposes, including, but not limited to, the authority of a physician to give such treatment.
730 ILCS 5/3–6–2(e).

his cause of action in *Walker II* presented a genuine dispute of fact as to whether the defendants made medical findings adequate to satisfy the Due Process Clause. Lastly, as he alleged in the proceedings below, Walker contends that the nature and duration of his confinement in segregation was unconstitutional under the Eighth Amendment. We consider, as a threshold matter, the issue of qualified immunity.

### A. Qualified Immunity

In response to the claims arising from the Haldol injections, the defendants raise the defense of qualified immunity which protects government officers from liability for damages if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The crucial inquiry under this standard is whether the contours of the alleged right were sufficiently clear at the time of the conduct so that a "reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Before we proceed to the merits of Walker's action, we must determine whether in 1988, prisoners had a constitutional right to be free from the forced administration of antipsychotic drugs. "Whether a constitutional right is clearly established is a question of law we review *de novo.*" *Sherman v. Four County Counseling Center*, 987 F.2d 397, 400 (7th Cir.1993).

Our decisions in *Sullivan v. Flannigan*, 8 F.3d 591, 596 (7th Cir.1993) and *Williams v. Anderson*, 959 F.2d 1411, 1416 (7th Cir.1992) provide significant guidance on the question of qualified immunity. In both cases, inmates at the Menard Correctional Center, brought § 1983 actions against members of the prison's medical staff, claiming that their due process rights under the Fourteenth Amendment had been violated by the forced administration of Haldol. We concluded that not until *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), did the Supreme Court clearly establish the process to which a prisoner was

constitutionally entitled before antipsychotic drugs could be administered. We held that for conduct occurring before the Supreme Court's decision in *Harper*, the defendants in both cases were, therefore, immune from a due process claim for damages. *Sullivan*, 8 F.3d at 596; *Williams*, 959 F.2d at 1416. Because the conduct in this case also arose before *Harper* was decided, the defendants are entitled to assert their qualified immunity and Walker's due process claim must fail.

A prisoner's Eighth Amendment rights concerning the forced injection of antipsychotic drugs were more defined. Since the Supreme Court's decision in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), it had been clearly established that medical treatment of prisoners would amount to cruel and unusual punishment if the conduct demonstrated a "deliberate indifference" to the prisoner's condition and an "unnecessary and wanton infliction of pain." *Id.* at 104–05, 97 S.Ct. at 291. This standard has been in place, relatively unchanged, since the Court's decision in *Estelle*. See, e.g., *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir.1990). Because the law here was clearly established, the defendants cannot avail themselves of the qualified immunity defense against alleged violations of the Eighth Amendment.

Having found that the defendants are entitled to the qualified immunity defense only on the due process claim, we proceed to review the two remaining Eighth Amendment claims to determine whether their disposition on summary judgment was appropriate.

### B. Eighth Amendment Violations

We review a decision granting summary judgment *de novo*. *Sherman v. Four County Counseling Center*, 987 F.2d 397, 400 (7th Cir.1993). Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once a party has moved for summary judgment, the burden shifts to the nonmoving party to show through specif-

ic evidence that a triable issue of fact remains on issues which the nonmovant bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, the evidence submitted in support of the nonmovant's position must be sufficiently strong that a jury could reasonably find for the non-movant. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991).

■■■ Walker's complaint alleged that the administration of Haldol without his consent and his long-term confinement to segregation violated the Eighth Amendment's Cruel and Unusual Punishment Clause. Applicable to the states by virtue of the Fourteenth Amendment, *Rhodes v. Chapman,* 452 U.S. 337, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981), the Eighth Amendment limits the severity of the conditions and treatment to which a prisoner may be subjected. *Id.* In terms of a prisoner's medical needs, the Supreme Court has held that the Eighth Amendment proscribes a deliberate indifference to a prisoner's serious illness or injury. *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Negligent treatment or diagnosis, alone, is insufficient to state an Eighth Amendment claim. *Id.* at 106, 97 S.Ct. at 292. As for the overall conditions of confinement, "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399. In light of the foregoing standards, we review each of Walker's claims.

### 1. Forced Administrations of Haldol

In the event a state prison inmate requires medical treatment but is unable to consent to such treatment, Illinois law permits the prison's chief administrative officer to consent on the inmate's behalf. Before he consents, however, the chief administrative officer must consult with a physician who must confirm: (1) that immediate treatment is necessary to prevent death, damage, or impairment to bodily functions; and (2) that the inmate is incapable of consent. 730 ILCS 5/3–6–2(e).

In his affidavit, Dr. Gandhy stated that based on his review of Walker's medical records and his April 8 meeting with Walker, it was his opinion that Walker's conduct posed a danger to Walker's own health and to the welfare of others. Walker's hemophilia made his condition particularly sensitive. Any cuts or bruises sustained by Walker, no matter how minor, posed grave health concerns. Because he frequently received blood transfusions, Walker was especially susceptible to infection and in fact, did contract Hepatitis on more than one occasion. Thus, when Walker engaged in bouts of explosive and assaultive behavior, he risked serious injury to himself. Physical restraint, whether imposed by prison officials or by soft leather restraints, presented a threat of further injury. During the course of his April 8 meeting with Walker, Dr. Gandhy observed that the leather restraints which Walker was wearing at the time were dangerous because he insisted upon thrashing about in a vain attempt to loosen them. The health concerns posed by Walker's hurling and smearing of excrement, and flooding of his cell are self-evident. Dr. Gandhy concluded that this behavior was the result of a personality disorder which caused Walker to explode into aggressive behavior with no provocation. Walker's history of obduracy with respect to medical advice combined with his penchant for self-destructive behavior led Dr. Gandhy to believe that Walker was simply irrational when it came to making decisions concerning his own health and welfare. In an attempt to quell Walker's destructiveness, Dr. Gandhy recommended the administration of Haldol.

Walker argues that Dr. Gandhy's conclusions are directly contradicted by Dr. Gandhy's own deposition testimony and by Walker's affidavit. Additionally, Walker claims that Dr. Gandhy's diagnosis of a personality disorder was also contradicted by Dr. Gandhy's deposition testimony. These two factual disputes were, in Walker's opinion, sufficient to withstand a motion for summary judgment.

Further scrutiny, however, reveals that the facts essential to this cause of action are not in dispute. On April 8 and on August 10, Dr. Gandhy recommended the nonconsensual ad-

ministration of Haldol because he believed Walker's behavior posed a danger to himself and others and, because in his opinion, Walker was incapable of consent. Neither Walker's affidavit nor Dr. Gandhy's deposition call this into dispute.

■ In his affidavit, Walker explained that his behavior was a form of protest to what he believed were inadequate prison conditions. He contends that he was not suffering from any psychotic condition, but he does not dispute that he engaged in the conduct. Walker's motives are, for our purposes, irrelevant. The fact remains that Walker insisted on conducting himself in a violent manner, heedless to the impact which such behavior could have on his own health. Walker's self-serving conclusions about his mental health are insufficient to withstand the defendants' motion for summary judgment. Not only do they fail to contradict any of the facts upon which Dr. Gandhy based his decision, *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464–65 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987), but there is no evidence that Walker is qualified to testify as to his medical condition. Fed. R.Civ.P. 56(e).

■ Dr. Gandhy's deposition is also not in tension with the decision in this case. Dr. Gandhy stated that in his April 8 meeting with Walker, Walker was rational to the extent that he was able to remember where he was, what he was doing, and what time of day it was. Walker claims that this testimony creates a dispute of material fact as to whether the Haldol was necessary because a jury could conclude based on this evidence that Walker was in no danger to anyone. Again, however, this falls short of rebutting or contradicting the facts which do suggest Walker's conduct was dangerous. Dr. Gandhy noted that Walker's violent behavior was intermittent and that at times he could appear calm. That Walker was oriented and able to discern his surroundings did not make his destructive behavior any less dangerous. In fact, while meeting with Dr. Gandhy, Walker was continually resisting and fighting against the leather restraints despite the fact that this might cause him injury. Nothing in any of the affidavits or deposi-

tions questions Gandhy's determination that Walker's behavior was dangerous. And because Walker points to no facts evidencing deliberate indifference to his medical needs on the part of the defendants, summary judgment was, as a matter of law, appropriate.

■ Walker argues alternatively that summary judgment was not proper in *Walker I* because there was conflicting evidence as to whether Dr. Gandhy's correctly diagnosed Walker as suffering from a borderline personality disorder. Dr. Gandhy arrived at his conclusion after consulting with Walker's treating psychologist Dr. Mark Carich, reviewing Walker's medical records, and meeting with him on April 8. In rebuttal, Walker provides us with a definition of borderline personality disorder and argues that Dr. Gandhy failed to match Walker's behavior to the criteria provided therein.

Walker's claim cannot survive summary judgment based on this evidence. By asking the court to apply the medical definition to Dr. Gandhy's findings, Walker, in effect, asks us to be his medical expert, a task we are obviously unqualified to undertake. The record reveals that in the unrebutted opinion of two qualified medical professionals, Dr. Gandhy and Dr. Shroff, Walker suffered from a personality disorder which caused him to behave dangerously. Had Walker provided evidence from a medical professional disputing Dr. Gandhy's diagnosis, then a triable fact may have existed here. Alternatively, if Walker's affidavit had disputed the facts upon which Dr. Gandhy based his medical opinion, we might be presented with an issue of fact. Based on the record before the trial court, however, neither the conduct which led Dr. Gandhy to arrive at his diagnosis nor Dr. Gandhy's diagnosis itself was in dispute.

### 2. Prolonged Segregation

Walker alleged in his complaint in *Walker II* that he has been held in segregation at various prisons for several months both before and after his ten months of confinement at Centralia. Walker contends that this long-term segregation constitutes a violation of the Eighth Amendment. In his affidavit, Walker adds that while in segregation, he

was sometimes denied water for up to a week and that he was not permitted sufficient exercise time. He also alleges that he was subjected to repeated physical abuse.

We held in *Meriwether v. Faulkner*, 821 F.2d 408, 415 (7th Cir.1986), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987), that prolonged confinement in administrative segregation "may constitute cruel and unusual punishment in violation of the Eighth Amendment." Whether such confinement does in fact violate the Eighth Amendment depends on the duration and nature of the segregation and the existence of feasible alternatives. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). That Walker was in segregation for administrative reasons is not in dispute. The defendants argue that Walker has failed to show that he has been deprived of any essentials and that his segregation was for his own benefit. We find, however, that Walker has raised an issue of fact as to whether the duration and conditions of his segregation were justified. A jury might find that Walker's prolonged term of segregation combined with the deprivations and abuse alleged in his affidavit constitute unconstitutional conditions of confinement.

We, therefore, remand *Walker II* to the magistrate judge with instructions to consider Walker's claim of prolonged segregation and to reinstate any defendants necessary to this claim.

### III.

The magistrate judge's holding with respect to Walker's claim of unconstitutionally prolonged segregation is reversed and remanded for further proceedings consistent with this opinion. In all other respects, *Walker I* and *Walker II* are affirmed, and each side is ordered to bear their own costs in this court.