51 F.3d 276
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Dwayne WALKER, Plaintiff-Appellant,
v.
Dr. GHOUDY, Ronald Shansky, Robert Newkirk, et al.,
Defendants-Appellees.
 No. 92-2829.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 24, 1995.*
Decided March 14, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Dwayne Walker, a prisoner in the Big Muddy River (Illinois) Correctional Center, appeals the district court's judgment in favor of defendants, various medical and prison officials of the Illinois Department of Corrections, in this action brought under 42 U.S.C. Sec. 1983. Walker alleges that defendants violated his rights to due process and to be free from cruel and unusual punishment when they forcibly administered psychotropic medication to him without his consent, using excessive force. We hold that defendants are entitled to qualified immunity on Walker's due process claim, and that the district court correctly granted judgment in favor of defendants on Walker's Eighth Amendment claim.
 
 BACKGROUND
 
 2
 Walker, a former inmate of the Centralia Correctional Center ("Centralia"), suffers from numerous physical ailments, including hemophilia, avascular necrosis of the right hip, a partially fused right ankle, and a pinched nerve in the back. Doctors have also diagnosed Walker as having a borderline personality disorder which causes psychotic episodes and intermittent explosive behavior. During Walker's psychotic episodes, he becomes verbally abusive and throws urine and feces at others. Walker has also tried to dictate the terms of his medical treatment.
 
 
 3
 In our recent decision, Walker v. Shansky, 28 F.3d 666 (7th Cir.1994) ("Walker I "), we addressed Walker's claims that two forced injections of tranquilizing drugs and his assignment to long-term segregation violated his constitutional rights. Walker I consolidated the appeals of two earlier lawsuits filed by Walker arising out of two instances when Centralia medical personnel and officials administered Haldol[1] to him against his will.
 
 
 4
 Walker I and the Injections of April 8, 1988 and August 10, 1988
 
 
 5
 The first injection, administered on April 8, 1988, was given in response to Walker's repeated threats against prison staff and doctors for inadequate medical attention. In that incident, Walker refused medical treatment and then began urinating and defecating on the floor of his cell and smearing his feces on the walls and floor. Dr. Pravin Gandhy,[2] a consulting psychiatrist at Centralia, believed that Walker's behavior posed a threat to others and, due to his condition as a hemophiliac, to Walker himself. Based on Dr. Gandhy's recommendation that Walker was incapable of consenting to medication, Centralia Warden Ronald Haws signed an Emergency Waiver of Consent Form, as required under Illinois law. Walker was then administered a dose of Haldol. He subsequently filed a lawsuit alleging violations of his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment.
 
 
 6
 Walker's second lawsuit arose out of another forced injection administered on August 10, 1988. On that day, Walker had engaged in destructive and abusive behavior in his cell, hurling feces at prison guards and starting a flood in his cell. Concerned about the harm which physical restraint might inflict on a hemophiliac and because the earlier Haldol injection had successfully subdued Walker, Dr. Gandhy recommended that another dosage be administered. Haws again signed an Emergency Consent Waiver, and Walker was administered another dose. As in his first lawsuit, Walker alleged that his constitutional rights under the Eighth and Fourteenth Amendments were violated by the forced administration of Haldol.
 
 
 7
 In both of these earlier lawsuits, the parties waived their rights to proceed before a district court judge and agreed to entry of judgment by a magistrate judge. Without conducting an evidentiary hearing, the magistrate judge found on the basis of the pleadings that both injections of Haldol were compelled by medical emergencies, and entered summary judgment in favor of the prison officials. We affirmed on appeal, holding that (1) defendants were entitled to qualified immunity on Walker's due process claims; (2) defendants were not entitled to immunity on Walker's Eighth Amendment claims; and (3) the forced injections did not violate Walker's Eighth Amendment rights.
 
 Injection of May 30, 1988
 
 8
 The present case arises out of yet another forced injection of tranquilizing drugs when Walker was an inmate at Centralia. On May 30, 1988, Walker was housed in the segregation unit at Centralia. Defendant Robert Newkirk, a correctional lieutenant at Centralia and defendant James Niepoetter, a correctional sergeant at Centralia, were assigned to deliver Walker's noon meal. They wore tactical gear because of Walker's prior history of throwing feces and urine at correctional officers. Newkirk and Niepoetter waited for Walker to finish his lunch so that they could retrieve the food tray and containers. Walker refused to return the food tray, and threw a cereal bowl full of feces out of his cell. Warden Haws was present in the segregation unit and told Newkirk and Niepoetter to enter Walker's cell to retrieve the food tray. The two officers returned to Walker's cell, asked him to hand out the remaining food containers, and told him that they were going to enter his cell. Through the observation window in the cell door, Newkirk and Niepoetter saw Walker display a piece of metal approximately 12 inches long. Walker told them that anyone who entered his cell would get "stuck."
 
 
 9
 When informed of Walker's conduct, Haws telephoned defendant Dr. Pravin Gandhy, the psychiatrist who had been treating Walker. Dr. Gandhy verified that he had issued a standing order[3] for Haldol injections for Walker. Dr. Gandhy had issued this order on May 4, 1988, providing for the administration of 50 milligrams of Haldol to be given as needed for agitated behavior, along with 2 milligrams of Cogentin for side effects. The standing order also contained the notation "REC-1 month," meaning that the prescription was to be rechecked in one month. Newkirk and Niepoetter received an order to take the piece of metal away from Walker and to administer an injection to Walker.[4]
 
 
 10
 Newkirk and Niepoetter entered the cell and saw feces smeared on the walls and the floor. When Walker turned off the lights in his cell, the two prison officers subdued Walker, pushed him down onto the bed, handcuffed him, and had a nurse administer an injection to him.
 
 
 11
 In September 1988, Walker filed this Sec. 1983 suit against various medical and prison officials, alleging that his Eighth and Fourteenth Amendment rights were violated when defendants forcibly administered psychotropic medication to him against his will, through the use of excessive force. Walker sought compensatory and punitive damages in the amount of $500,000 from each defendant. The district court referred the claim to a magistrate judge for an evidentiary hearing under 28 U.S.C. Sec. 636(b)(1)(B).
 
 
 12
 After holding an evidentiary hearing, Magistrate Judge Gerald Cohn issued a report recommending that judgment be granted in favor of defendants and against Walker. Magistrate Judge Cohn concluded that defendants Haws, Shansky, and Gandhy were not sufficiently involved in the decision to medicate Walker to have caused the alleged deprivation of Walker's constitutional rights. Magistrate Judge Cohn also concluded that defendants Newkirk and Niepoetter did not intentionally inflict excessive punishment upon Walker when they subdued him in order to administer the medication. District Judge William Stiehl, after conducting a de novo review, adopted the magistrate judge's report and entered judgment in favor of defendants and against Walker.
 
 
 13
 Walker appeals.
 
 DISCUSSION
 
 14
 Walker raises two arguments on appeal. First, he argues that he had a liberty interest in avoiding the forced injection of antipsychotic drugs on May 30, 1988. Second, he argues that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they forcibly administered Haldol to him through the use of excessive force. Walker raised similar arguments in Walker I, which was decided after the parties here had filed their briefs before this court. We believe that the conclusions reached in that decision apply with equal force to some of the arguments Walker raises here. As in Walker I, we consider as a threshold matter the issue of qualified immunity.
 
 I. Qualified Immunity
 
 15
 In response to Walker's claims arising from the May 30, 1988 Haldol injection, defendants urge that they are shielded from civil liability under the doctrine of qualified immunity.[5] Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Formigoni, 42 F.3d 1060, 1064 (7th Cir.1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This circuit has set forth a two-part analysis for qualified immunity: (1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time the violation occurred? Burns v. Reed, No. 93-1711, 1995 WL 3243, at * 2 (7th Cir. Jan. 5, 1995). A negative answer to either inquiry resolves the matter in favor of defendants. Id.
 
 
 16
 Our decision in Walker I guides us on the question of qualified immunity regarding Walker's due process claim. In that case, we noted that not until Washington v. Harper, 494 U.S. 210 (1990), did the Supreme Court clearly establish the process to which an inmate was entitled before antipsychotic drugs could be administered. Walker I, 28 F.3d at 670 (citing Sullivan v. Flannigan, 8 F.3d 591, 596 (7th Cir.1993) and Williams v. Anderson, 959 F.2d 1411, 1416 (7th Cir.1992)). We held that because Walker received injections on April 8, 1988 and August 10, 1988--both before the Court's 1990 decision in Harper--defendants were immune from a due process claim for damages. Id. In this lawsuit, Walker's injection of May 30, 1988 also occurred before Harper was decided; consequently, defendants are entitled to qualified immunity from Walker's due process claim.
 
 II. Eighth Amendment Violation
 
 17
 Applicable to the states through the Fourteenth Amendment, the Eighth Amendment limits the severity of the treatment and conditions to which an inmate may be subjected. Walker I, 28 F.3d at 671 (citing Rhodes v. Chapman, 452 U.S. 337, 345 (1981)). Concerning a prisoner's medical needs, the Supreme Court has held that the Eighth Amendment prohibits a deliberate indifference to a prisoner's serious illness or injury. Estelle, 429 U.S. at 105. A prison official may be found liable for deliberate indifference if he " 'knows of and disregards an excessive risk to inmate health or safety.' " Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir.1994) (quoting Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994)).
 
 
 18
 We review findings of fact under a clearly erroneous standard. Thornton v. Brown, No. 94-1258, slip op. at 4 (7th Cir. Feb. 3, 1995); see Fed.R.Civ.P. 52(a). The district court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). A finding is clearly erroneous when the reviewing court, based on the evidence before it, maintains the "definite and firm conviction that a mistake has been committed." Thornton, slip op. at 4-5 (internal citations and quotations omitted). We review conclusions of law de novo. Kraushaar v. Flanigan, No. 94-1483, slip op. at 20 (7th Cir. Jan. 13, 1995).
 
 
 19
 In entering judgment in favor of defendants and against Walker, the district judge adopted the report and recommendation submitted by the magistrate judge. The district judge agreed with the magistrate judge's conclusion that the defendants, Warden Ronald Haws, Dr. Ronald Shansky, and Dr. Pravin Gandhy, were not personally involved in the decision to medicate Walker on May 30, 1988. There is ample evidence in the record to support this conclusion. For instance, Dr. Shansky testified at the evidentiary hearing that he was not called or consulted on May 30, 1988 regarding the decision to medicate Walker, and he had no knowledge of the incident. In addition, Warden Haws denied personal responsibility for the decision to have Haldol administered to Walker on that date. At the evidentiary hearing, Haws testified that on May 30, 1988 he contacted Dr. Gandhy, but only to confirm that the doctor had in fact issued a standing order for Haldol. Haws testified that he acquiesced in the decision to medicate Walker because he believed that the determination was a medical issue. As for Dr. Gandhy, it is undisputed that on May 4, 1988, he gave a standing order for the administration of Haldol to Walker. Yet testimony at the hearing established that Dr. Gandhy's only involvement with the forced injection on May 30, 1988 was in confirming to Warden Haws that a standing order for Haldol existed. There is no evidentiary support to suggest that Dr. Gandhy's issuance of the standing order reflected anything other than his best medical judgment, with Walker's best interests in mind.
 
 
 20
 The district court also agreed with the magistrate judge's conclusion that the remaining defendants, prison officers Robert Newkirk and James Niepoetter, did not violate Walker's constitutional rights. This conclusion is supported by the evidence. Once the decision was made to forcibly medicate Walker, who was extremely agitated and uncooperative on the day in question, Newkirk and Niepoetter merely performed their staff duties by subduing Walker so that he could be injected with Haldol. The record does not show that the two prison guards were deliberately indifferent to Walker's health or safety. Nor does the record show that Newkirk and Niepoetter used excessive force. In determining whether prison officials used excessive force in violation of the Eighth Amendment, we consider "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hill v. Shelander, 992 F.2d 714, 717 (7th Cir.1993) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (internal quotations and citations omitted)). We may also take into account the need for the application of force, the extent of the injury inflicted, and the extent of the threat to the safety of others. Kinney v. Indiana Youth Ctr., 950 F.2d 462, 465 (7th Cir.1991), cert. denied, 112 S.Ct. 2313 (1992). The evidence showed that on May 30, 1988, Walker was acting belligerently, threatening staff, tossing human feces, and even brandishing a metal weapon. When Newkirk and Niepoetter entered his cell, Walker refused their lawful order to lie face down on his bed with hands behind him for cuffing so that an injection could be administered. Walker's minor injuries resulted from his resistance to the officers' efforts to subdue him. The record does not show that the officers applied force maliciously or sadistically to cause harm.
 
 
 21
 Based upon the testimony at the evidentiary hearing, as well as other evidence in the record, we cannot say that the district court's findings were clearly erroneous. Accordingly, we affirm the district court's judgment in favor of defendants on Walker's Eighth Amendment claim.
 
 CONCLUSION
 
 22
 Because a prisoner's rights to due process regarding the forced injection of antipsychotic drugs were not clearly established by May 30, 1988, we hold that defendants are entitled to qualified immunity from liability for Walker's due process claim. Additionally, we agree with the district court that the evidence does not show that defendants acted with deliberate indifference in having Haldol forcibly administered to Walker. Because the district court's findings were not clearly erroneous, its judgment is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Haldol is a tranquilizer used to treat schizophrenia and other psychotic mental disorders. By altering the chemicals of a patient's brain, it enables the patient to organize his or her thought processes. Walker v. Shansky, 28 F.3d 666, 669 (7th Cir.1994)
 
 
 [2]
 Gandhy, one of the named defendants in the present case, is referred to as "Ghoudy" in both Walker's complaint and the district court's memorandum and order. We will refer to him here as "Gandhy," which is the spelling he provided during his testimony at the evidentiary hearing before the magistrate judge
 
 
 [3]
 A standing order refers to a doctor's order for medication on an "as needed" basis that extends over time, according to defendant Dr. Ronald Shansky, the Director of Medicine for the Illinois Department of Corrections. Dr. Shansky testified at the evidentiary hearing on Walker's claims that if a standing order was based on certain objective behavioral situations, such as smearing oneself or others with feces, a nurse on duty could administer the medication on an "as needed" basis. (Evidentiary Hearing of 5/21/92, Supp.R. at 53.)
 
 
 [4]
 The record does not clearly show who made the decision to administer Haldol to Walker on May 30. When the magistrate judge posed this specific question to him, Warden Haws responded that he was "not sure" and "would have no way of knowing" who ordered the injection. (Supp.R., at 114.) The magistrate judge himself made the factual finding that the nurse in the segregation gallery (who is not a defendant here) "pursuant to the standing order for the administration of Haldol written by Dr. Gandhy, made the determination to inject the plaintiff with Haldol after the officers entered the cell." Walker v. Dr. Ghoudy, No. 88 C 3629, slip op. at 5 (S.D.Ill. June 4, 1992) (Report and Recommendation)
 
 
 [5]
 We note that neither the magistrate judge nor the district court made any factual findings on the issue of qualified immunity. Defendants asserted a defense of qualified immunity but did not do so until their closing remarks at the evidentiary hearing before the magistrate judge. Although the purpose of a qualified immunity defense is to avoid unnecessary burdens on public officials through use of the summary judgment mechanism, defendants are not precluded from raising an immunity defense at a later stage of the proceedings. Rakovich v. Wade, 850 F.2d 1180, 1204 (7th Cir.), cert. denied, 488 U.S. 968 (1988)