**Carol POWERS, Plaintiff,**

v.

**Marvin RUNYON, United States Postal Service, Defendant.**

**No. IP 96–170–C–T/G.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 18, 1997.

Carol Powers, Greenburg, IN, pro se.

Tim A. Baker, Asst. U.S. Atty., Indianapolis, IN, for U.S. Postal Service.

Sue Hendricks Bailey, Asst. U.S. Atty., Indianapolis, IN, for Marvin Runyon.

## ENTRY DISCUSSING MOTION FOR SUMMARY JUDGMENT

TINDER, District Judge.

### I. Introduction

This is an action brought by Carol Powers ("Powers") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, and of the Rehabilitation Act, 29 U.S.C. §§ 791–794a (1982). Powers' claims arise out of her discharge from her employment as a Transitional Distribution Clerk at the Columbus, Indiana Post Office.

The Postmaster General ("Postmaster") seeks resolution of these claims through the entry of summary judgment. Powers has opposed the motion. For the reasons explained in this Entry, the Postmaster's motion for summary judgment must be granted.

As used in this Entry, "TDC" refers to the position of a Transitional Distribution Clerk, "CIPO" refers to the Columbus, Indiana Post Office, "USPS" refers to the United States Postal Service, and "EEOC" refers to the Equal Employment Opportunity Commission.

### II. Summary Judgment

#### A. Summary Judgment Standard

Rule 56(c) of the *Federal Rules of Civil Procedure* provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

#### B. Summary Judgment Methodology

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in the evidence of record. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir.1992). It does so by identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting *Fed.R.Civ.P.* 56(c)).

"After one party has filed a motion for summary judgment, 'the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues [on] which the nonmovant bears the burden of proof at trial.'" *Pharma Bio, Inc. v. TNT Holland Motor Express, Inc.,* 102 F.3d 914, 916 (7th Cir.1996) (quoting *Walker v. Shansky,* 28 F.3d 666, 670–71 (7th Cir. 1994)). The non-movant fails to demonstrate a genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party...." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 1356, 89 L.Ed.2d 538 (1986). If no genuine issue of material fact exists, the sole question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011, 1014 (7th Cir.1996).

"Summary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law." *Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir.1994).

### C. Powers as Pro Se Litigant

Since the Postmaster seeks the entry of summary judgment and since Powers is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), was issued. Through this notice, Powers was notified of the nature of the defendant's motion, of the proper manner in which to respond and of the consequences of failing to respond. This process affords Powers "a full opportunity to present contradicting affidavits or materials in order to cure a jurisdictional or party defect not capable of being resolved on the words of the complaint." *English v. Cowell,* 10 F.3d 434, 437 (7th Cir.1993) (citing *Fountain v. Filson,* 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949)). This information assures that Powers' claims receive the fair and meaningful consideration to which they are entitled, though within the scope of applicable rules of procedure and, of course, the substantive law.

"[P]ro se litigants are not entitled to a general dispensation from the rules of procedure." *Jones v. Phipps,* 39 F.3d 158, 163 (7th Cir.1994). Although the pleadings of *pro se* litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure. *Id.; Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir.1987) ("the requirements of Rule 56(e) are set out in mandatory terms....").

### D. Motion to Strike

The defendant has moved to strike the statements and materials submitted by Powers with her opposition to the motion for summary judgment. Powers has not replied to this motion to strike.

The standard established by Rule 56(e) of the *Federal Rules of Civil* Procedure requires that affidavits presented in opposition to the defendant's motion be based upon personal knowledge; a statement merely indicating that a purported affidavit is based upon "information and belief" is insufficient. *Price v. Rochford,* 947 F.2d 829, 832–33 (7th Cir.1991); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). Conclusory statements or indications of opinion or belief offered without any factual support are also insufficient to create a genuine issue of fact. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992). Rather, affidavits must cite specific concrete facts establishing the existence of the truth of the matter asserted. *Hadley v. County of DuPage,* 715 F.2d 1238, 1243 (7th Cir.1983); *see Mitchell v. Toledo Hospital,* 964 F.2d 577, 584–85 (6th Cir.1992) (affidavit which contained nothing more than rumors, conclusory allegations and subjective beliefs could not be considered).

As to documentation, in order to be considered in supporting or opposing a motion for summary judgment, documents must be authenticated. Other materials are of no value in either establishing the presence or the absence of a material question of fact. *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987). As explained in one treatise, in order for a document to be considered by a court in ruling on a motion for summary judgment, the document "must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e)

and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2722 at 58–60 (2d ed.1983) (footnote omitted).

Based on the foregoing, the following rulings are made with respect to the motion to strike:

Copies of written statements signed by Steve Schoettmer, Gary M. Reichenbacker, and Lawrence W. Guthrie are **stricken**. The reason for this is that these documents are not authenticated.

Documents bearing on Powers' grievance through the American Postal Workers Union, AFL–CIO, are **stricken**. The reason for this is that these documents are not authenticated.

For the sake of completeness, the defendant's motion to strike on the grounds of relevance of the materials submitted by Powers in support of her opposition to the motion for summary judgment is **denied**. The court finds it inappropriate in most cases-and this case is no exception-to strike materials submitted in support of or in opposition to a motion for summary judgment on the grounds of relevance. Although the issue of relevance is certainly one of the fundamental questions in sifting through expanded evidentiary material to determine whether the standard of Rule 56(c) has been met, the ordinary course this court follows is to determine whether and how those materials relate to the factual and legal issues which must be determined in ruling on the motion.

The effect of the court's ruling on the defendant's motion to strike is to render the defendant's motion for summary judgment unopposed by any evidentiary material. The plaintiff's discussion of her claims refers to evidence, but none has been presented in a form which can be considered. The court therefore has no alternative but to proceed on the basis of the materials and arguments which are pending.

## III. Findings of Fact and Conclusions of Law

### A. Findings of Fact

Based on the materials already described, the following findings of fact are made. The findings are those as to which there is no genuine factual dispute or, if there is such a dispute, are those most favorable to Powers as the non-moving party.

1. Powers, who is female, was employed at the CIPO as a TDC. A TDC was a temporary position with the USPS, classified as a Non–Career Temporary Appointment Not to Exceed 359 days.

2. As an employee of the USPS at the CIPO, Powers was subject to personnel policies in effect at the CIPO. One such policy required an employee's regular attendance at work, meaning consistent and timely attendance. The rationale for this requirement was the determination that "[a]n unscheduled absence, irrespective of the cause, invariably has an adverse impact on the ability to schedule personnel and to carry out [the CIPO's] many functions in an effective manner." The policy further provided that when employees do not maintain a regular attendance schedule, the USPS would take the necessary corrective action to insure that the efficiency of the CIPO's service to the public is maintained.

3. Powers did not maintain regular attendance. Specifically, records maintained by the CIPO show that Powers was not properly in attendance at work at the CIPO on the following days, each of which are within a 30–day period:

 a. On April 18, 1993, Powers was 1.01 Hours Late

 b. On May 1, 1993, Powers was .35 Hours Late

 c. On May 8, 1993, Powers was 1.24 Hours Late

 d. On May 10–11, 1993, Powers was entirely absent from work.

4. Powers' failure to maintain regular attendance as specified above constituted a violation of her obligation as a USPS employee at the CIPO. On May 12, 1993, a supervisory of Powers, Randall T. Steele, requested appropriate disciplinary action for Powers because of what the supervisor considered to be Powers' unsatisfactory attendance.

5. On May 17, 1993, Powers requested temporary assignment to Light Duty for approximately two weeks, a period which was expected to end on May 27, 1993. Powers supported this request with her physician's statement that Powers was being treated for or was recuperating from muscle spasms in her cervical spine and from anxiety, and that during this period of time she had lifting restrictions. On May 26, 1997, Powers' physician, Dr. R.C. Domingo, released Powers to work with no restrictions.

6. On May 20, 1993, Randall Steele issued a "notice of removal" to Powers, informing Powers that she was to be removed from the USPS on June 25, 1993, due to her unsatisfactory attendance. Powers' unscheduled absences from work as specified in Paragraph 3 of Part III.A. of this Entry were noted as the basis for this action. In addition, this "notice of removal" informed Powers of her right to file a grievance relative to the action which was being taken.

7. As a temporary employee of the USPS, Powers was not contractually entitled to any particular program of "progressive discipline" and was not protected from termination or other adverse employment action other than for "just cause." In other words, as a temporary employee, Powers could be disciplined in any lawful manner the USPS found appropriate and had no protected interest in continued employment with the USPS.

8. Powers filed a "Complaint of Discrimination in Postal Service" on August 23, 1993. She alleged in this Complaint of Discrimination that she had been terminated from a temporary position for a reason (unsatisfactory attendance) for which other employees were not terminated. She indicated in the Complaint of Discrimination that the unlawful aspect of her termination was that it was based on her sex and on her "perceived" disability. The reference by Powers to a perceived disability was Dr. Domingo's certification that Powers had the weight lifting restriction already described in this Entry.

9. Any conclusion of law set forth below, to the extent it represents a finding of fact, shall be construed in that fashion. Similarly, any finding of fact above, to the extent it represents a conclusion of law, shall be treated in that fashion.

## B. Conclusions of Law

Based on the foregoing Findings of Fact, the court now makes the following Conclusions of Law. There are two issues presented by Powers' complaint. These mirror the claims she presented to the EEOC, and in fact are limited to such claims.

● The first issue is whether the USPS discriminated against Powers on the basis of her sex, female when Powers was discharged from her position as TDC at the CIPO.

● The second issue is whether the USPS discriminated against Powers on the basis of a physical disability (light duty status) when Powers was discharged from her position as TDC at the CIPO.

Although the analytical structure for assessing these claims are similar, the court finds it preferable to give distinct consideration to each claim.

1. *Title VII Claim (Sex Discrimination).* Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice to discriminate against an individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a).

To succeed on a claim of gender discrimination, a plaintiff may meet her burden of proof by establishing intentional discrimination either through direct or circumstantial evidence of discriminatory intent. *Helland v. South Bend Community School Corp.,* 93 F.3d 327, 329 (7th Cir.1996). If direct evidence is unavailable, the plaintiff may establish intentional discrimination through the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Powers does not contend that there was direct evidence of discrimination in her separation from the USPS. She therefore relies on the indirect method of establishing her claim. In order to prevail under the *McDonnell Douglas* burden-shifting ap-

proach, the plaintiff must initially establish a *prima facie* case of discrimination by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). Once the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer makes this showing, the plaintiff has the ultimate burden of persuasion and must demonstrate by a preponderance of the evidence that the employer's stated reason was but mere pretext for discrimination.

A *"prima facie* case requires evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *International Broth. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). To raise a *prima facie* case of sex discrimination under the *McDonnell Douglas* burden-shifting method, Powers must show that: (1) she belongs to a protected class (in this case, females); (2) she performed this job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated a similarly-situated male employee more favorably. *See Cheek v. Peabody Coal Co.,* 97 F.3d 200, 203 (7th Cir.1996).

The defendant's motion for summary judgment in this case assumes that Powers has made a *prima facie* case of gender discrimination. The argument within that motion, therefore, is that the defendant has met its burden of showing that Powers' separation from the USPS was not pretextual. This presents for resolution the following question: Given the relative burdens in deciding a motion for summary judgment, has the USPS articulated a legitimate, non-discriminatory reason for Powers separation, and has Powers shown a genuine issue of fact as to whether that reason was pretextual? *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67 (7th Cir.1995).

■ There are two senses in which the USPS has articulated a legitimate, nondis-criminatory reason for its actions in separating Powers from the CIPO. First, the USPS was entitled to terminate Powers' employment for any lawful reason or no reason; the USPS need not have had a "good" reason or a reason of any particular character in terminating Powers from her employment. Second, the USPS separated Powers from her employment because of Powers' unscheduled absences from work.

■ The final question in the analysis is therefore whether Powers has come forward with a genuine issue of fact as to whether the USPS's reason for her separation was pretextual? Pretext is more than a mistake, it "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d at 68. A showing that the employer's proffered reasons are pretextual may be demonstrated by establishing: (1) the reasons have no basis in fact; (2) the reasons were not the actual motivation of the employment decision; or (3) the reasons were insufficient to motivate the employment decision. *Wolf v. Buss (America), Inc.,* 77 F.3d 914, 919 (7th Cir.), *cert. denied,* ——— U.S. ———, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996).

Powers has not shown pretext in her separation from the USPS. Her unscheduled absences were documented. Thus, the factual basis for Powers' separation from the USPS was not fabricated. There is no competent evidence to support an inference that her unscheduled absences were not the actual motivation for the decision. The expanded evidentiary record does show that a male TDC, Jeffrey Owens, accumulated a record of unscheduled absences from work and was separated from the CIPO. Owens had been employed at the CIPO on September 21, 1992, and was separated from the USPS by written notice on December 10, 1992. The Postmaster of the CIPO, Joseph L. Pugh, knows of no male employed as a TDC at the CIPO during the same time period as Powers who had a similar absenteeism and tardiness record who was not separated or terminated from his position. This evidence, while it does not necessarily negate a distinct element of Powers' claim, reinforces the defendant's argument, with which the court

agrees, that Powers has failed to "establish[ ] a logical reason to believe that the decision [to separate her from the USPS] rest[ed] on a legally forbidden ground." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996). Finally, the reason given in the "notice of removal" issued on May 20, 1993, was sufficient to motivate the decision to separate her from the CIPO.

Based on the foregoing, namely the presence of a legitimate reason for the USPS's action in terminating Powers, together with the *absence* of evidence suggesting that the reason was pretextual, the defendant is entitled to summary judgment as to Powers' claim of discrimination against her based on her gender in violation of Title VII.

*2. Rehabilitation Act Claim (Discrimination based on Disability).* Powers' second claim is that she was the victim of discrimination based on her handicap, this being that she was briefly limited to light work duty during the second half of May, 1993.

The federal statute implicated by this claim is the Rehabilitation Act of 1973, which provides in pertinent part that

[n]o otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...

29 U.S.C. § 794 (1988 & Supp. IV 1992). A 1978 amendment to the Rehabilitation Act, codified at 29 U.S.C. § 794a, provides "that the 'remedies, procedures, and rights' in Title VII of the Civil Rights Act of 1964 'shall be available' to any federal employee or job applicant complaining of discrimination against the [disabled]." Congress further amended the Rehabilitation Act in 1992, substituting the word "disability" for the word "handicap," and adding subsections (b), (c) and (d). Rehabilitation Acts Amendments of 1992, Pub.L. 102–569, § 102(p)(32)(A), (B) and § 506. Powers thus has the statutory right to proceed with her claim of discrimination by the USPS based on her asserted actual or perceived disability.

A plaintiff basing her claim on the Rehabilitation Act must establish that: (1) she is an individual with disabilities; (2) she is otherwise qualified; (3) she is excluded from programs solely because of the handicap; and (4) the programs from which she is excluded are operated by an agency that is federally funded. *Byrne v. Board of Education*, 979 F.2d 560, 563 (7th Cir.1992).

"Because the 'remedies, procedures and rights available under the Rehabilitation Act are the same that are afforded under Title VII,' a plaintiff suing under the Rehabilitation Act may 'rely on ... the burden-shifting method borrowed from Title VII cases and originally established in *McDonnell Douglas....*'" *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir.1995) (citing *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 400 (7th Cir.1992)).

As with the gender discrimination claim, Powers has not alleged any direct evidence of handicap discrimination. The indirect method of proof is therefore triggered. Unlike its argument relative to Powers' gender discrimination claim, however, the defendant argues that Powers has not established—and cannot establish—a *prima facie* case under the Rehabilitation Act.

To succeed on her claim under the Rehabilitation Act, Powers must meet the threshold burden of establishing that she was "disabled" within the meaning of the Act. *Hamm v. Runyon*, 51 F.3d 721, 724 (7th Cir.1995). The current definition of an "individual with a disability" (a "handicapped person" in the original text of the Rehabilitation Act) is found at 29 U.S.C. § 706(8)(B) (1988 & Supp. IV 1992):

[T]he term "individual with a disability" means ... any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

" 'Major life activities' are defined as 'functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working,' 29 C.F.R. § 1613.702(c), and the phrase 're-

garded as having such an impairment' in the Act is defined in pertinent part as a person who 'has none of the (above described) impairments ... but is treated by an employer as having such impairment.' 29 C.F.R. § 1613.702(e)." *Hamm,* 51 F.3d at 724.

The term "substantially limits" means that the individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population. See 29 C.F.R. § 1630.2(j)(1)(ii). "Many impairments do not impact an individual's life to the degree that they constitute disabling impairments." *Hamm,* 51 F.3d at 726 (citing 29 C.F.R. § 1630.2(j)(1)(ii)).

 The purpose of the Rehabilitation Act is to prohibit invidious discrimination against individuals with significantly restricting disabilities, real or perceived. *Vande Zande v. State of Wisconsin Dept. of Administration,* 44 F.3d 538, 541 (7th Cir.1995).

Powers' diminished ability to lift—which for the purpose of the defendant's motion for summary judgment will be assumed to have affected in some fashion her ability to perform her normal duties as a TDC at the CIPO-impacted her for two (2) weeks. She was released to return to work without restriction by her physician effective May 27, 1993. This brief restriction—which dictated that Powers refrain from lifting objects above a certain weight and which is described in the record (by Powers herself) as "light duty status," did not constitute a physical or mental impairment which substantially limited one or more of Powers' major life activities, did not show that Powers had a record of such an impairment, and did not show that the USPS regarded Powers as having had such an impairment. *See id.,* 51 F.3d 721, 725 (explaining that "intermittent, episodic impairments are not disabilities").

The first element of a *prima facie* case of discrimination based on disability is therefore absent. Once again, however, even if such a *prima facie* case was present, the defendant has articulated a legitimate, non-discriminatory reason for Powers' separation from the USPS. This reason was Powers' excessive unscheduled absences from work. Powers has not met her burden of showing in reply that this non-discriminatory reason was a pretext.

To avoid summary judgment, Powers must present evidence from which a "rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class." *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir.1994) (citing *Visser v. Packer Eng'g Assoc.,* 924 F.2d 655, 658 (7th Cir.1991)). Powers has not done so in this case because the "protected class" in which she has sought enlistment consists of persons with a disability, and she is not among them based on her condition and its effect on her in May of 1993. The defendant's motion for summary judgment must therefore be granted as to Powers' claim under the Rehabilitation Act.

### IV. Conclusion

"Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter." *Kuhn v. Ball State Univ.,* 78 F.3d 330, 332 (7th Cir.1996). Powers' claims are unsupported by a genuine issue showing that her separation from the USPS was the result of either her gender or a disability. The USPS was not required to have a "good" reason for terminating Powers from her employment. That was simply an attribute of the nature of her position. The USPS also was under no legal compulsion to exercise its judgment concerning Powers' employment in a manner identical to the manner in which it exercised judgment in relation to other temporary employees. All the USPS needed to have done, in relation to the claims asserted in this case, was steer clear of terminating (or disciplining) Powers for any reason which has been declared illegal. The termination of Powers which is challenged in this case clearly did not cross into such forbidden territory.

*Fed.R.Civ.P.* 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). That is precisely the situation with respect to Powers' claim in this case. Accordingly, the defendant's motion for summary judgment is **granted**. Powers' request to reconsider the previous denial of her request for the appointment of counsel is **denied**.

**IT IS SO ORDERED.**