David O. **BENNETT**, Plaintiff,

v.

William J. **HENDERSON**,[1] Postmaster General of United States Postal Service, Defendant.

**Civil Action No. 97–2151–GLR.**

United States District Court, D. Kansas.

Aug. 7, 1998.

1. The President of the United States appointed William J. Henderson to serve as Postmaster General, effective May 17, 1998. Pursuant to Fed.R.Civ.P. 25(d)(1), the court substitutes William J. Henderson as the defendant in this litigation for Marvin T. Runyon, former Postmaster General of the United States Postal Service.

Shellie L. James, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Overland Park, KS, for Plaintiff.

Robert A. Olsen, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

The court has under consideration Defendant's Motion for Summary Judgment (doc.

26) and a Motion For Leave to File Separately Attachments to Declarations of Mark Scarborough and John Ford Submitted with Memorandum in Support of Defendant's Motion for Summary Judgment (doc. 28). Plaintiff opposes the motion for summary judgment. He has filed no response to the motion for leave. Accordingly, the court grants the latter motion as uncontested. *See* D.Kan. Rule 7.4. The court will consider the documents attached to the motion for leave as attachments to the submitted declarations.

Pursuant to Fed.R.Civ.P. 56(c), defendant seeks summary judgment on the claims of plaintiff. Plaintiff alleges discrimination in violation of the Rehabilitation Act of 1973 (the Act), 29 U.S.C. §§ 701–797b (1985 & Supp.1998). Section 501 of the Act, 29 U.S.C. § 791, protects federal employees from discrimination on the basis of disability.[2] *Johnson v. United States Postal Serv.,* 861 F.2d 1475, 1477–78 (10th Cir.1988). Plaintiff specifically alleges that defendant failed to accommodate him as a disabled individual protected under the Act and retaliated against him and terminated his employment because of his disability. (Pretrial Order, doc. 30, ¶ 4.) The following facts are either uncontroverted or, if controverted, viewed in the light most favorable to the plaintiff. *Applied Genetics Int'l Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). The court has ignored immaterial facts and those not properly supported in the record. Pursuant to D.Kan. Rule 56.1, the court has deemed "[a]ll material facts set forth in the statement of the movant . . . admitted for the purpose of summary judgment unless specifically controverted by the statement of [plaintiff]."

## I. Factual Background

On Thursday June 23, 1994, plaintiff worked for defendant as a General Expediter (GE) PS–6 at its General Mail Facility in Kansas City, Kansas (GMF). On that date he completed his assigned duties and left work at the end of his shift with no complaint of injury or accident. Although experiencing soreness, he returned to work Friday, June 24, 1994. Throughout June 25 and 26, 1994, he experienced increased pain and stiffness in his cervical back area. He thus scheduled an appointment with his health care provider, Kaiser Permanente, for Monday, June 27, 1994. On that Monday he asked defendant to grant him two weeks sick leave.

On July 8, 1994, Paul W. Baumert, Jr., M.D. examined plaintiff. He diagnosed right cervical radiculopathy. He ordered plaintiff off work until July 22, 1994. He saw plaintiff for follow-up on July 22 and would not release him to work. On August 3, 1994, he released plaintiff for light duty until August 19, 1994, with the following restrictions: minimal stooping, twisting, and bending and minimal pushing, pulling, and repetitively lifting over twenty pounds. Defendant accommodated these restrictions by assigning plaintiff to available light duty positions. Plaintiff continued on light duty status until August 25, 1994, when he returned to regular duty. While attempting regular duty, he admitted to defendant that he could no longer perform the functions of the GE position. Accordingly, he did not return to work after September 5, 1994. On November 23, 1994, Dr. Baumert advised defendant that the condition of plaintiff would not improve and that plaintiff should seek a position in another environment.

**2.** In 1992 Congress amended the Act to substitute use of the term "disability" for "handicaps." *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 155 n. 7 (2d Cir.1998). The court will likewise utilize the terms "disabled" or "disability," for clarity. The definition of persons covered under the Act before and after the 1992 amendments remains essentially the same. *Compare* 29 U.S.C. § 706(8) (Supp.1998) (defining "individual with a disability") *with* 29 U.S.C. § 706(7) (1991) (defining "handicapped individual"). The regulations promulgated pursuant to the Act, 29 C.F.R. pt. 1614, were issued prior to the 1992 amendments and thus still use the outdated "handicapped" terminology. "The regulations have not caught up" with the 1992 amendments. *Knapp v. Northwestern Univ.,* 101 F.3d 473, 482 n. 7 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997). Courts have used "disabled" and "handicapped" interchangeably. *See Burns v. City of Columbus,* 91 F.3d 836, 840 n. 3 (6th Cir.1996). The change in terminology made no substantive change to the Act. *Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 929 n. 3 (8th Cir.1994).

On January 20, 1995, L.F. Glaser, M.D. examined plaintiff. Dr. Glaser concurred with the diagnosis of Dr. Baumert. Dr. Glaser indicated that he would not permit plaintiff to perform the duties of GE.

On February 20, 1995, Geoffrey L. Blatt, M.D. recommended that plaintiff should try returning to work. He further recommended that plaintiff look for a less strenuous position should that attempt fail. Dr. Blatt later opined in March 1995 that, although plaintiff would most likely not sustain more serious injury by returning to work, he had no problem recommending a career change. On January 9, 1996, Dr. Baumert opined that plaintiff "is very capable of gainful employment in a desk-type job which requires little strenuous activity."

Plaintiff has degenerative cervical disc disease. It prevents strenuous activities. His medical care providers have restricted his job opportunities to those which do not involve bending, twisting, stooping, pushing, pulling, and lifting more than twenty pounds. They have recommended that he switch to a more sedentary position. Plaintiff has difficulty, furthermore, in standing or sitting for long periods of time. His limitations preclude mowing the lawn, lifting a laundry basket, pushing a vacuum cleaner, maintaining an automobile, and performing recreational activities, such as softball.

Plaintiff has acknowledged that he cannot perform the duties of the GE position or the light duty tasks available at the GMF. In August or September 1994 he briefly spoke with his supervisor Charlie Frazier about changing the doors at the GMF to accommodate his condition. He asked no one, however, to evaluate whether the doors could be changed to accommodate his condition. He never asked for automated plates as an accommodation for his condition. He never requested the procurement of a motorized riding device or chair to assist him. He made no specific request for any other aids to accommodate his condition. His primary aim was to transfer to a vacancy within the GMF. He basically sought accommodation in the form of job transfer, rather than any type of expensive equipment or changes. Defendant had no vacant position to which it could transfer him, however, with physical restrictions within the limits that he could tolerate.

On December 19, 1994, plaintiff filed a formal complaint with the EEO Complaint Processing unit of the Mid America District of defendant. Among other remedies, he sought accommodation in the form of education, training, and job placement outside the United States Postal Service. The EEO counselor memorialized these requested accommodations in an Inquiry Report. Plaintiff has repeatedly requested either education, training, or job placement in the form of detail, transfer, or reassignment with the defendant. Other than the brief conversations with Mr. Frazier, plaintiff has sought no other accommodation.

By letter dated August 1, 1995, plaintiff sought a transfer to another governmental agency. He stated in that letter that he could no longer perform his "required job duties." He sought a position compatible with his physical restrictions. On August 7, 1995, defendant advised plaintiff that it could not transfer him to another federal agency, but he could request transfer to another Postal Service installation. On August 10, 1995, plaintiff requested information regarding detail, transfer, or reassignment. He sought education, training, and job placement with Continuation of Pay. In August of 1995 defendant had no positions to which it could transfer plaintiff. Although defendant could not transfer plaintiff within the Postal Service, it did locate an open position with the General Service Administration that was within his limitations.

Besides filing a formal complaint of discrimination, plaintiff has pursued several avenues of relief since June 23, 1994. On July 11, 1994, he requested Continuation of Pay (COP) benefits while he pursued a claim for injury under the Federal Employees' Compensation Act with the Office of Workers' Compensation Programs (OWCP), United States Department of. Labor. He received such benefits for the period of July 8 through August 3, 1994. On September 12, 1994, he submitted a Notice of Occupational Disease and Claim for Compensation (CA–2 form) to his supervisor, Charlie Frazier. OWCP de-

nied this claim initially and upon reconsideration.

The parties have engaged in much correspondence regarding the proceedings initiated by plaintiff and his work status. By letter dated September 21, 1994, defendant directed plaintiff to return to work by September 26, 1994, or show cause why he should be excused from work. It informed plaintiff that failure to explain his absences would result in his being designated Absent Without Leave (AWOL) and possibly disciplinary action, including termination. It further directed that plaintiff provide acceptable documentation from a physician. In response plaintiff referred defendant to the CA–2 form. On November 7, 1994, plaintiff contacted an Equal Employment Opportunity (EEO) Counselor and claimed discrimination under the Rehabilitation Act by reason of the letter of September 21, 1994. On November 19, 1994, and January 20, 1995, defendant requested that plaintiff provide documentation about his work status and anticipated date of return to work. Plaintiff advised defendant that he would provide such documentation when he received it.

On July 20, 1995, defendant notified plaintiff that his COP benefits had been denied and that his payroll records needed to be changed to sick leave, annual leave, or leave without pay. On July 24, 1995, plaintiff informed defendant that he would authorize no adjustment to his payroll record, until the OWCP again reviewed his claim. On August 21, 1995, defendant advised plaintiff that his claim had been disallowed and that, by August 28, 1995, he should report for duty or provide documentation as to his inability to work. It also advised him that failure to respond could result in corrective action, including termination.

On August 26, 1995, plaintiff advised defendant that he had requested additional review of the denial of benefits. He also provided a copy of Dr. Baumert's letter dated November 23, 1994. On August 30, 1995, defendant advised plaintiff that the requested review did not relieve him of his obligation to maintain contact with his supervisor. It further advised him that the letter of November 23, 1994, was not current medical documentation. It directed him to maintain contact with his supervisor until matters resolved. It also informed him that he had until September 7, 1995, to provide current documentation.

On September 2, 1995, plaintiff advised defendant that he had scheduled another medical appointment for September 5, 1995, and would provide the results of that appointment, when available. On September 11, 1995, he advised defendant that he had been referred for an appointment on September 25, 1995, with a Dr. DiFazio. On September 15, 1995, defendant informed plaintiff that the items submitted on September 11, 1995, were not medical documentation that showed him unable to perform his duties. It also informed him that it would continue to carry him as AWOL pending the results of the appointment with Dr. DiFazio.

On September 28, 1995, plaintiff provided defendant with copies of a referral form reflecting the appointment with Dr. DiFazio, a Physical Therapy referral form, a return to work authorization form showing that Dr. DiFazio sent him to physical therapy, and an appointment card for appointment with Dr. Baumert scheduled for October 24, 1995. On October 16, 1995, defendant advised plaintiff that it was necessary to meet and discuss his employment status. On October 28, 1995, plaintiff refused to meet with defendant.

On February 21, 1996, defendant issued a Notice of Removal, wherein it advised plaintiff that his employment would be terminated at the close of business, April 4, 1996, for his "[f]ailure to properly respond to notices of absence inquiry, resulting in you being charged Absent Without Leave" since January 9, 1995. The notice informed plaintiff that he had the right to file a grievance. He pursued no grievance on the matter. He responded to the Notice only through the EEOC process. Defendant terminated plaintiff on April 4, 1996.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee*

*v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material," if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. All disputed facts, and reasonable inferences derived from the evidence presented, must be resolved in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 977 (10th Cir.1995); *FDIC v. 32 Edwardsville, Inc.,* 873 F.Supp. 1474, 1479 (D.Kan.1995).

The moving party bears the burden to show the absence of a genuine issue of material fact. *Turpin v. State of Kan., Dep't of Corrections,* No. 94–2480–JWL, 1996 WL 227792, at *2 (D.Kan. Apr.5, 1996). This burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* Courts construe Fed.R.Civ.P. 56 to satisfy one of its principal

purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548. "Entitlement to summary judgment must be proven beyond a reasonable doubt." *Duff v. GMC,* 962 F.Supp. 1420, 1422 (D.Kan. 1997) (citing *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980)).

## III. Applicable Statutory and Regulatory Schemes

Plaintiff alleges discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797b. "The regulatory scheme promulgated pursuant to this and other acts addressing the discrimination of disabled citizens in the public and private sector has resulted in a Gordian knot of regulations, jurisprudence, and, occasionally, confused citations to each." *Magee v. United States Postal Serv.,* 903 F.Supp. 1022, 1026 n. 4 (W.D.La.1995), *aff'd,* 79 F.3d 1145 (5th Cir.1996). Unfortunately, this case has not escaped the Gordian knot. Defendant cites to 29 C.F.R. pts. 1613, 1614, and 1630.[3] Plaintiff cites to 45 C.F.R. pt. 84. Both parties rely upon case law which cites and relies upon these various provisions of the Code of Federal Regulations. Before proceeding to the substantive questions presented by the motion for summary judgment, clarification as to which statute and regulations govern this action appears in order.

"In the Tenth Circuit, section 501 of the Rehabilitation Act, 29 U.S.C. § 791, provides a federal employee's exclusive remedy for disability discrimination." *DeFrees v. West,* 988 F.Supp. 1390, 1393 (D.Kan.1997); *see also, Williams v. Widnall,* 79 F.3d 1003, 1004 n. 1 (10th Cir.1996). In its original form, section 501 contained no private right of action. "Congress added such a right in 1978 by enacting section 505(a)(1), 29 U.S.C. § 794a(a)(1)." *Williams,* 79 F.3d at 1004 n. 1. Section 794a(a)(1) extends the "remedies, procedures, and rights" available under Title VII, 42 U.S.C. § 2000e–16 to federal employees with disability discrimination claims.

---

**3.** Although defendant also cites to "29 C.F.R. 422 (app. to pt. 1630)," the correct citation appears to be 29 C.F.R. pt. 1630 app. (commentary on 29 C.F.R. § 1630.15(d)). Title 29 of the Code of

Federal Regulations has no part or section 422. The cited appendix, furthermore, does not appear on page 422.

The Equal Employment Opportunity Commission (EEOC) has promulgated regulations to implement the anti-discrimination provisions of the Rehabilitation Act. Part 1614 of Title 29 of the Code of Federal Regulations governs Federal Sector Equal Employment Opportunity, i.e. claims brought under section 501 of the Act. It covers individual and class complaints of discrimination and retaliation prohibited by the Rehabilitation Act. 29 C.F.R. § 1614.103(a). It expressly applies to the United States Postal Service. *Id.* § 1614.103(b)(3). Effective October 1, 1992, Part 1614 superceded Part 1613 and began to govern administrative complaints and appeals alleging employment discrimination filed by federal employees and applicants for federal employment. *Johnson v. Runyon,* 47 F.3d 911, 915 (7th Cir.1995); Federal Sector Equal Employment Opportunity, 57 Fed.Reg. 12,634, 12,634 (1992). Effective August 25, 1995, the EEOC eliminated Part 1613 as obsolete. Federal Sector Equal Employment Opportunity, 60 Fed.Reg. 43,371, 43,371–72 (1995). "Prior to its repeal, [Part] 1613 set forth procedures to be used by federal agencies and the EEOC for processing complaints of employment-related retaliation and discrimination filed before October 1, 1992; [Part] 1614 governs complaints filed after October 1, 1992." *Anvari v. Shalala,* 83 F.3d 426, ——, No. 95–15147, 1996 WL 208942, at *1 (9th Cir.1996) (Table, text on Westlaw).

The EEOC has also promulgated regulations to implement the Equal Employment provisions of the Americans with Disabilities Act (ADA). *See* 29 C.F.R. pt. 1630. The specific purpose of Part 1630 is to implement Title I of the ADA. 29 C.F.R. § 1630.1(a). Part 1630 applies to employers, employment agencies, labor organizations, and joint labor management committees. *Id.* §§ 1630.1(b) and 1630.2(b). Defendant is not an employer under Part 1630. The regulations specifically exclude the United States from the definition of employer. *See id.* § 1630.2(e)(2)(i). Defendant, furthermore, is not an employment agency or labor organization. *See* 42 U.S.C. § 2000e(c) and (d) (29 C.F.R. § 1630.2(c) provides that labor organizations and employment agencies "shall have the same meaning given those terms" in 42 U.S.C. § 2000e). Defendant is also not a joint labor management committee. Part 1630 thus appears facially inapplicable to this action.

■ As amended in 1992, section 501 of the Rehabilitation Act, as codified, provides that the standards applied under Title I of the ADA shall be used to determine whether that section has been violated. 29 U.S.C. § 791(g). To that extent regulations promulgated under the ADA appear relevant to claims based upon section 501. The Tenth Circuit Court of Appeals has recently commented on the issue in dictum:

> while the ADA and the Rehabilitation Act *generally* are to be interpreted and applied consistently with one another ... the standards used to determine whether a federal employer has violated section 501 of the Rehabilitation Act will not always be identical to those employed in suits brought under section 504 or under the ADA. In particular, this court recently noted that "the meaning of reasonable accommodation ... may vary due to the heightened duties ascribed to federal employers under section 501."

*Smith v. Midland Brake, Inc.,* 138 F.3d 1304, 1311 (10th Cir.1998) (citations and footnote omitted). The reasoning in *Midland Brake* appears sound. The court accepts the general rule, as set forth therein.

The court also recognizes significant differences between regulations promulgated under section 501 and those promulgated under the ADA. The former regulations are "stricter than those promulgated under the ADA." *Midland Brake,* 138 F.3d at 1311. Under section 501 federal agencies must develop affirmative action programs for the hiring, placement, and advancement of individuals with disabilities. *See* 29 U.S.C. § 791(b). "By contrast, neither section 504 of the Rehabilitation Act nor the ADA creates such affirmative action obligations." *Midland Brake,* 138 F.3d at 1311. "It is well established both by the statutory language and Supreme Court decisions interpreting the [Rehabilitation] Act that federal employers have greater duties to accommodate disabled workers under section 501 than the duties

owed by federal grantees under section 504 or those owed by employers under the ADA." *Woodman v. Runyon,* 132 F.3d 1330, 1343 (10th Cir.1997). ADA regulations as contained in Part 1630 of Title 29 of the United States Code, however, are often relevant and helpful to the resolution of actions brought under section 501 of the Rehabilitation Act. *See Powers v. Runyon,* 974 F.Supp. 693, 701 (S.D.Ind.1997).

The Department of Health and Human Services has also promulgated regulations to implement the provisions of the Rehabilitation Act. *See* 45 C.F.R. Pt. 84. The express purpose of Part 84 "is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance." *Id.* § 84.1. Part 84 has no applicability to the matters now before the court. Plaintiff may proceed only under section 501 of the Rehabilitation Act, not section 504. The court, nevertheless, notes that Parts 84 and 1614 have substantial similarities. *Compare* 29 C.F.R. §§ 1614.101 to 1614.607 *with* 45 C.F.R. §§ 84.1 to 84.55.

## IV. Applicable Case Law

■ The Tenth Circuit Court of Appeals has recently addressed the applicability of case law construing the ADA and section 504 of the Rehabilitation Act to cases under section 501 of the Rehabilitation Act. *See Woodman v. Runyon,* 132 F.3d 1330 (10th Cir. 1997). It cautions that "courts should be wary of applying cases interpreting federal grantees' duties of reasonable accommodation under section 504 to cases brought under section 501," due to the affirmative action duties placed upon federal employers under section 501. *Id.* at 1338 n. 6. It noted that in some instances, however, case law decided under the ADA applies to cases brought under section 501. *Id.* at 1339 n. 8. Again it cautioned courts to remain mindful of the "heightened duties of 'reasonable accommodation' not applicable to private employers under the ADA." *Id.*

## V. Applicable Burden-shifting Framework

The parties agree that the well-known, burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny applies in this case. That framework indeed applies in cases under both sections 501 and 504 of the Rehabilitation Act, when the employer disclaims any reliance upon the protected status of plaintiff in making the employment decision. *Florence v. Runyon,* 990 F.Supp. 485, 494 (N.D.Tex. 1997) (applying framework in context of section 501 claim); *Dratz v. Johnson,* 60 F.3d 837, No. 94–6056, ——, 1995 WL 406946, at *3 (10th Cir.1995) (Table, text on Westlaw) (applying framework in context of section 504 claim). Plaintiff thus bears the initial burden to establish a *prima facie* case of discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). He must produce evidence that raises a reasonable inference that each element of a *prima facie* case exists. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 530 (10th Cir.1994). Once plaintiff establishes a *prima facie* case of discrimination the burden shifts to defendant to articulate legitimate, nondiscriminatory reasons for its treatment of plaintiff. *Brinkman v. State Dep't of Corrections,* 863 F.Supp. 1479, 1485 (D.Kan.1994).

## VI. Discussion

Defendant argues that plaintiff cannot state a *prima facie* case of discrimination under the Rehabilitation Act, as amended. It suggests that plaintiff is not disabled, within the meaning of the Act. It further suggests that plaintiff was unqualified to perform the essential functions of his job or any available light duty positions. It argues, furthermore, that plaintiff's claim for compensation under the Federal Employees' Compensation Act and his failure to seek accommodation preclude him from maintaining that he is otherwise qualified for his former position. Alternatively, it argues that it has reasonably accommodated plaintiff. It also argues that plaintiff has failed to state a *prima facie* case of retaliation.

To succeed on his claim of discrimination under section 501 of the Rehabilitation Act,

plaintiff must prove that (1) he is "disabled" within the meaning of the statute; (2) he is "otherwise qualified," that is, he can perform the essential functions of the job with or without accommodation; and (3) the personnel action was taken by defendant because of his disability. *Woodman v. Runyon,* 132 F.3d 1330, 1338 (10th Cir.1997).

## A. Disability

The court first examines whether plaintiff is "disabled," within the meaning of the Rehabilitation Act. For present purposes, "the term 'individual with a disability' means ... any person who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B); *see also,* 29 C.F.R. § 1614.203(a)(1). Subparts (ii) and (iii) are not at issue here. It is undisputed, furthermore, that plaintiff has a physical impairment—degenerative cervical disc disease. The parties disagree as to whether that impairment substantially limits a major life activity.

■ "Major life activities means functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3). Part 1614 of Title 29 of the Code of Federal Regulations provides no definition for "substantially limits." Part 1630 defines the phrase, however, to mean that the individual is either unable to perform, or significantly restricted as to the condition, manner, or duration under which the individual can perform, a major life activity as compared to an average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1)(i) and (ii). Courts have specifically adopted this definition in cases brought against the Post Office under section 501 of the Rehabilitation Act, 29 U.S.C. § 791. *See Powers v. Runyon,* 974 F.Supp. 693, 701 (S.D.Ind.1997). Under the ADA, as well as sections 501 and 504 of the Rehabilitation Act, courts consider three factors in determining whether an impairment substantially limits a major life activity. *Gonzagowski v. Widnall,* No. 94–0016 MV/LFG, 1995 WL 930486, at *4–5 (D.N.M. Oct.17, 1995) (finding the analysis applicable to sections 501 and 504 "virtually identical" and applying regulations implementing Title I of the ADA, 29 C.F.R. pt. 1630), *aff'd,* 115 F.3d 744 (10th Cir.1997); *Dutton v. Johnson County Bd. of Comm'rs,* 859 F.Supp. 498, 505 (D.Kan.1994) (perceiving "no practical difference" between the ADA and sections 501 and 504 of the Rehabilitation Act and applying Part 1630 to all the claims). The factors are: (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or long-term impact, or expected impact. 29 C.F.R. § 1630.2(j)(2).

■ For the purposes of this motion it is uncontested that the condition of plaintiff restricts him to non-strenuous activities. His medical care providers have restricted his job opportunities to those which do not involve bending, twisting, stooping, pushing, pulling, and lifting more than twenty pounds. They have recommended that he switch to a more sedentary position. It is also uncontested that plaintiff has difficulty standing or sitting for long periods of time. The listed limitations preclude mowing the lawn, lifting a laundry basket, pushing a vacuum cleaner, maintaining an automobile, and performing recreational activities, such as softball. In view of these uncontested facts, a question of fact exists as to whether plaintiff is substantially limited in any major life activity. The Tenth Circuit Court of Appeals has held that, in the context of an ADA claim, lifting is a major life activity. *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir. 1996). The same should hold true in the context of a claim under section 501 of the Rehabilitation Act. Evidence that a plaintiff cannot lift more than fifteen pounds and should only occasionally lift items of lesser weight creates a genuine issue of material fact with respect to whether the impairment substantially limits the ability to lift. *Id.* Evidence that a plaintiff cannot lift more than twenty pounds likewise presents a triable issue of material fact.

## B. Otherwise Qualified and Reasonable Accommodation

Defendant next argues that plaintiff was not qualified to perform the essential func-

tions of his job. It suggests that he should be estopped from maintaining that he is otherwise qualified by his claim for compensation under the Federal Employees' Compensation Act (FECA) and his failure to seek accommodation. Alternatively, it argues that it has reasonably accommodated him. It suggests that plaintiff has admitted that he cannot perform the essential functions of the GE position or light duty positions available at the Post Office. Viewing the record in a light most favorable to plaintiff, it appears that he has admitted only that he is unable to perform the essential functions of those positions in the absence of reasonable accommodation.

### 1. Judicial Estoppel

 The argument that the FECA claim of plaintiff precludes a present assertion that he is "otherwise qualified" has no merit. Under the law of the Tenth Circuit Court of Appeals, plaintiff is "not judicially estopped" from now making claims inconsistent with his prior representations in the related FECA proceeding. *See Smith v. Midland Brake, Inc.,* 138 F.3d 1304, 1312 (10th Cir.1998). The Tenth Circuit has expressly "rejected the doctrine of judicial estoppel." *See United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir.1986). Had the Circuit accepted the doctrine, furthermore, it would have applied it only if plaintiff had succeeded in the earlier proceeding. *See id.* It is undisputed that plaintiff failed in the FECA proceeding.

Defendant cites a number of cases from other jurisdictions to support its assertion of judicial estoppel. Such opinions, however, carry little weight when contrary, binding authority exists within the Tenth Circuit. The position of plaintiff at the FECA proceeding, furthermore, does not appear inconsistent with a claim that he is "otherwise qualified" within the meaning of the Rehabilitation Act. A plaintiff may be unable to perform a particular job for purposes of a workers compensation claim, even though he or she can perform it, within the meaning of the Rehabilitation Act with reasonable accommodation.

### 2. Alleged Failure to Seek Accommodation

 The argument that plaintiff cannot now claim that he is "otherwise qualified," because he failed to request reasonable accommodation, likewise has no merit. Viewed in a light most favorable to plaintiff, the record shows that he requested reasonable accommodation. Plaintiff had brief conversations with his supervisor about changing the doors at the GMF to accommodate his condition. Plaintiff filed an affidavit with the EEOC, furthermore, wherein he specifically requested "education, training and/or job placement whether it be with the postal service or another Federal agency" as part of the resolution of his complaint. (EEO Investigative Affidavit, attached to Mem. in Supp. Def.'s Mot. Summ. J., doc. 27.) Such a request asks for reasonable accommodation.

### 3. Related Issues of Otherwise Qualified and Reasonable Accommodation

The court next addresses the related issues of "otherwise qualified" and "reasonable accommodation." The Tenth Circuit Court of Appeals has established the following framework for analyzing whether a disabled individual is "otherwise qualified" under the ADA:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*White v. York Int'l Corp.,* 45 F.3d 357, 361–62 (10th Cir.1995) (quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir. 1993)); *see also, Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir. 1996). The Tenth Circuit has subsequently held the framework applicable "under section 501 of the Rehabilitation Act." *See Woodman v. Runyon,* 132 F.3d 1330, 1339 (10th Cir. 1997). It has modified it as follows:

> To determine if a person with a disability is "otherwise qualified" for employment,

we look to whether or not a reasonable accommodation would enable the person to perform the job. There are two components to the reasonable accommodation analysis. *First*, whether a reasonable accommodation would enable the employee to do the particular job. Additional training might be a reasonable accommodation for this purpose. *Second*, whether the employee could be transferred to other work which could be done with or without accommodation.

*Gonzagowski v. Widnall*, 115 F.3d 744, 747 (10th Cir.1997); *see also, Woodman*, 132 F.3d at 1340.

According to the EEOC regulations implementing the Rehabilitation Act, a "[q]ualified individual with handicaps" is: "an individual with handicaps who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who ... [m]eets the experience or education requirements ... of the position in question." 29 C.F.R. § 1614.203(a)(6). "[T]he relevant inquiry in determining whether an employee is 'qualified' under the amended Act for purposes of a motion for summary judgment is whether the employee has provided evidence that [he or] she can be reasonably accommodated—which includes reasonable reassignment—sufficient to require submission to a jury." *Woodman*, 132 F.3d at 1340. Section 1614.203(g) of Title 29 of the Code of Federal Regulations explicitly provides that a federal employer must attempt reassignment when a disabled employee cannot be reasonably accommodated to perform the essential functions of his or her existing job:

> When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program. In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required, but availability of such a vacancy shall not affect the employee's entitlement, if any, to disability retirement pursuant to 5 U.S.C. § 8337 or 5 U.S.C. § 8451.

In addition § 1614.203(g) imposes an obligation on the federal employer to offer reassignment, unless the employer has already posted the position as available:

> If the agency has already posted a notice or announcement seeking applications for a specific vacant position at the time the agency has determined that the nonprobationary employee is unable to perform the essential functions of his or her position even with reasonable accommodation, then the agency does not have an obligation under this section to offer to reassign the individual to that position, but the agency must consider the individual on an equal basis with those who applied for the position.

If the available position has been posted, the employer "must consider the employee for that position without discrimination." *Gonzagowski*, 115 F.3d at 748.

In *Woodman* the Tenth Circuit Court of Appeals addressed "the burden of proof plaintiffs and defendants must meet in order to survive summary judgment under [section 501 of] the Rehabilitation Act." 132 F.3d at 1342–46. It provides the following guidance:

> We ... hold that a plaintiff bears the ultimate burden of proving [he or] she is "qualified" within the meaning of the Rehabilitation Act, *i.e.*, that there are jobs available that [his or] her disability will nevertheless allow [him or] her to do, with or without reasonable accommodation. However, a plaintiff's burden with respect to the plausibility of reasonable accommodation is one of production only. In accordance with section 501 of the Rehabilitation Act's mandate that federal employers act affirmatively to provide reasonable ac-

commodation for disabled workers, this burden of production "is not a heavy one. It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." Once the plaintiff has made this facial showing that accommodation is possible, the burden shifts to the defendant to prove that accommodating the plaintiff would pose an undue hardship.

We are convinced that placing the burden of locating other available jobs entirely on the plaintiff would be inconsistent both with the implementing regulations of the 1992 amendments and with the affirmative action duties contemplated by section 501, the latter of which do not apply to private employers under the Americans with Disabilities Act, the statute controlling our decision in [*White v. York Int'l Corp.*, 45 F.3d 357 (10th Cir.1995)]. The duties of reasonable accommodation under section 501 and the duty to reassign under the 1992 amendments are mandates with which federal employers are obligated to comply. Federal employers therefore must play a considerable role in ensuring that every reasonable effort is made to find suitable jobs for disabled employees. Without question, employees must come forward with that information they are best placed to know—the fact and nature of their disability and their wish to be accommodated. In other words, employers are not required *to initiate the inquiry* into whether a given employee with a disability can be accommodated.

Nevertheless, we agree with those courts concluding that realizing the goals of the Rehabilitation Act requires an "interactive process" whereby federal employers investigate in good faith the availability of positions to which disabled employees could be reassigned, a task that employers are far better placed to do than are employees, and that they must do under the Act. We find persuasive the Ninth Circuit's interpretation of the employer's duties under the Rehabilitation Act once an employee has identified the nature of [his or] her disability and requested accommodation:

> An employer, to meet its burden under the Act, may not merely speculate that a

suggested accommodation is not feasible. When accommodation is required to enable the employee to perform the essential functions of the job, the employer has a duty to 'gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are necessary to enable the applicant to perform the job....'

Common sense dictates that an employee need not identify an available position for reassignment prior to enlisting the employer's assistance. In order to initiate the interactive process, it is enough for a plaintiff to notify the employer of the nature of [his or] her disability and specifically request information about possible reassignment. At that point, the employer is obliged to assist [him or] her in the effort to identify an available job.

*Id.* at 1344–45 (citations and footnotes omitted).

▇ Plaintiff has not carried his burden to show that he is "otherwise qualified" for his former GE position, within the meaning of section 501 of the Rehabilitation Act. It is undisputed that he cannot perform the essential functions of that position without accommodation. He has shown no reasonable accommodation, however, which would permit him to do the job. He must suggest to defendant a plausible accommodation, the costs of which do not clearly exceed its benefits. He presently suggests that defendant could install automated doors and lifts or procure a motorized cart or chair to accommodate his condition. The court cannot find, however, that he made all of these suggestions to defendant in a timely manner. Prior to his termination he had requested accommodation, other than transfer or reassignment, only in brief conversations with his supervisor Charlie Frazier. Although plaintiff leaves the content of those conversations vague, it appears that he and Mr. Frazier discussed the possibility of changing or altering the doors of the GMF to accommodate his condition. He specifically admits upon deposition that he never requested that defendant place automated plates upon the doors or that it procure a motorized riding device or chair to accommodate his condition.

Giving him every benefit of the doubt, the court can find only that he timely requested defendant to change the doors at the GMF.

 Had plaintiff indeed timely requested all the above listed accommodations, his case still falls short. The suggested accommodations appear facially unreasonable. Some of them would require structural changes to the temporary facility of defendant. By plaintiff's own testimony, moreover, even with the accommodations he would not be able to perform all essential functions of the GE position. When requested accommodations do not permit the plaintiff to perform all essential functions of his or her former position, then he or she is not otherwise qualified for that position. *Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir.1996); *see also,* 29 C.F.R. § 1614.203(a)(6) (stating that qualified individual must be able to perform essential functions of the position).

The regulations promulgated to implement the anti-discrimination provisions of section 501 of the Rehabilitation Act, 29 C.F.R. pt. 1614, do not define "essential functions." The regulations promulgated to implement Title I of the ADA, 29 C.F.R. pt. 1630, however, again provide helpful and appropriate guidance. "The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). The term "does not include the marginal functions of the position." *Id.*

A job function may be considered essential for any of several reasons, including but not limited to the following: (i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function. *Id.* § 1630.2(n)(2) (paragraph structure altered). Evidence relevant to the determination of what functions are essential

includes, but is not limited to: (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

*Id.* § 1630.2(n)(3).

The determination of which functions are essential may be critical to the determination of whether or not the individual with a disability is qualified. The essential functions are those functions that the individual who holds the position must be able to perform unaided or with the assistance of a reasonable accommodation.

The inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential....

If the individual who holds the position is actually required to perform the function the employer asserts is an essential function, the inquiry will then center around whether removing the function would fundamentally alter that position. This determination of whether or not a particular function is essential will generally include one or more of the ... factors listed in part 1630.

. . . . .

Whether a particular function is essential is a factual determination that must be made on a case by case basis. In determining whether or not a particular function is essential, all relevant evidence should be considered. Part 1630 lists various types of evidence, such as an established job description, that should be considered in determining whether a particular function is essential. Since the list is not exhaustive, other relevant evidence may also be presented. Greater weight will not be granted to the types of evi-

dence included on the list than to the types of evidence not listed.

29 C.F.R. pt. 1630 app. (commentary on 29 C.F.R. § 1630.2(n)).

Plaintiff has detailed the functions of the GE position. (*See* Ex. 9 attached to Mem. in Supp. Def.'s Mot. Summ. J. at 100321–23.) He states that, upon the arrival of a vehicle at the dock, the following series of events occurs while servicing the vehicle: (1) open dock door; (2) open vehicle door, which may include removing seals, wires, chains, and/or padlocks; (3) pull-out dock plate; (4) remove load securing device; (5) load or unload contents; (6) remove dock plate; (7) close vehicle door; and (8) close dock door. (*Id.* at 100321.) In addition to servicing vehicles the GE position of plaintiff entailed constant and continual sorting of mail contained in letter trays, flat trays, sacks, parcels, and pouches. (*Id.* at 100322.) Plaintiff estimated the average weight of letter trays to be fifteen pounds and flat trays to be thirty-five pounds. He noted that sacks, pouches, and parcels were limited to seventy pounds. (*Id.* at 100323.) The identification of the functions of the GE position by plaintiff appears consistent with the stated functions of the position by the defendant. (*See* General Expediter—Level 6, Basic Function, attached as Ex. 9 at 100320.)

■ Testimony of plaintiff indicates that his requested accommodations would not enable him to perform all functions of the GE position. He testified that, even with the accommodations, he would be unable to open the truck doors or cut seals and wires, without assistance from others. He also testified that use of a mechanized chair would probably preclude loading and unloading trucks. He further testified that the accommodations would not permit him to sort mail as required between handling trucks. The court need not determine whether all of these functions are essential, within the meaning of the Rehabilitation Act. If plaintiff cannot perform even one essential function with accommodation, then he is not otherwise qualified for the position.

■ If opening truck doors and cutting seals and wires are arguably marginal func-

tions of the GE position, sorting mail is nevertheless essential. Plaintiff has testified that not all expediters loaded and unloaded trucks. Sorting mail, however, unquestionably appears to be an essential function of the position. Nothing of record indicates otherwise. Testimony and statements of both parties, moreover, indicate that it is essential. The court finds it essential to the GE position. Plaintiff has unambiguously stated that he cannot perform that function, furthermore, even with his requested accommodations. Accordingly, he is not otherwise qualified for the position.

■ Plaintiff makes no suggestion and presents no evidence, furthermore, that the requested accommodations *would* enable him to perform the other functions of the GE position. He states only that they *might* permit him to perform them. No doctor opines that he may return to his former position with the requested, or any other, accommodation. The doctors only suggest transfer as an accommodation. The Rehabilitation Act does not require the employer to make structural changes to a temporary facility or undertake a requested accommodation against a simply speculative possibility that it might allow the employee to perform the essential functions of the position despite his or her condition. Inherent in the concept of reasonable accommodation is the requirement that it permit the disabled worker to perform the essential functions of the position. "To be deemed a qualified individual, an individual must be capable of performing the essential functions of the job in question, with or without accommodation." *Rio v. Runyon,* 972 F.Supp. 1446, 1457 (S.D.Fla. 1997). Although the record contains no estimates of the costs involved in making the accommodations requested by plaintiff, the cost would clearly exceed the benefit to be derived in view of the fact that no evidence indicates that the requested accommodations would permit plaintiff to perform all essential functions of the GE position.

■ In view of the affirmative goal of the federal government to be a model employer for those with disabilities, the court realizes that an accommodation which would be unreasonable for a private employer could be

found to be a reasonable undertaking for the federal government. *See Woodman,* 132 F.3d at 1344 n. 14. Although "[t]here is little to stop the federal government from expending considerable money and effort to become a model employer of handicapped individuals, when that is its chosen policy," *id.* (quoting Lex K. Larson, *Employment Discrimination* § T106.44(a) (2d ed.1977)), there nevertheless exists some point at which a suggested accommodation exceeds the bounds of reasonableness even for the federal government. The suggestions of plaintiff crosses that point.

Plaintiff also has not shown himself "otherwise qualified" for a transfer to some other position of defendant which he could do with or without accommodation. He initiated an inquiry into whether he could be accommodated by a transfer. That inquiry obliged defendant to assist him in identifying an available position. Defendant provided such assistance. The search uncovered no vacant position in the same commuting area serviced by defendant. Although plaintiff has shown that he could perform sedentary, office type work, he has shown no vacant position in the same commuting area and serviced by defendant. In the absence of such a vacant position, the requested accommodation of transfer is unreasonable. "If it turns out there is no job which the worker (with or without accommodation) is capable of performing, then the company cannot be liable for an ADA or Rehabilitation Act violation." *Mengine v. Runyon,* 114 F.3d 415, 420 (3d Cir.1997). The Rehabilitation Act does not require a defendant to create a new position for a disabled worker. *Id.* at 418.

Plaintiff has shown no reasonable accommodation which would permit him to perform the essential functions of his former position. He has shown no vacant light duty position to which defendant could transfer him. His claim of discrimination under section 501 of the Rehabilitation Act of 1973, accordingly fails. The court will grant summary judgment in the favor of defendant on that claim.

## C. Retaliation

Defendant also seeks summary judgment on the retaliation claim of plaintiff. Plaintiff alleges that "defendant retaliated against [him] for objecting to and reporting the discriminatory conduct of the defendant and for requesting reasonable accommodation." (Pretrial Order ¶ 4h.) He further alleges that his "disability was a direct, motivating factor in the defendant's" decision to terminate him in April 1996. (*Id.* ¶¶ 4i and 4j.)

Although the Rehabilitation Act itself provides no cause of action for retaliation, the regulations promulgated pursuant to it do so. Section 1614.101(b) of Title 29 of the. Code of Federal Regulations provides that "[n]o person shall be subject to retaliation for opposing any practice made unlawful by ... the Rehabilitation Act ... or for participating in any stage of administrative or judicial proceedings" under the Act. To establish a *prima facie* case of retaliation in violation of the Rehabilitation Act plaintiff must show (1) that he engaged in activity protected under the Act, (2) that he suffered an adverse employment action subsequent to or contemporaneous with such protected activity, and (3) that there is a causal connection between the protected activity and the adverse employment action. *Moore v. City of Overland Park,* 950 F.Supp. 1081, 1085 (D.Kan.1996) (setting forth elements for a *prima facie* case for the Rehabilitation Act, ADA, and ADEA). The elements of the *prima facie* case of retaliation are the same whether a plaintiff proceeds under the Rehabilitation Act, ADA, ADEA, or Title VII. *Compare id. with Jeffries v. State,* 147 F.3d 1220, 1231 (10th Cir.1998) (setting forth elements under Title VII). The court can thus appropriately rely upon case law interpreting any of these statutes.

The record shows that plaintiff engaged in protected activity by seeking counseling with an EEO counselor on November 7, 1994, and filing a formal complaint in December 1994. That element of the *prima facie* case is not in dispute. Defendant disputes, however, that it took adverse employment action against plaintiff. Plaintiff suggests that the adverse action took two forms: (1) his ultimate termination and (2) threatened termination if he did not provide information and medical documentation sufficient to satisfy

the subjective standards of defendant. He contends that, prior to the exercise of his federally protected rights, defendant had never threatened to terminate his employment. He claims that defendant only began to submit threatening and harassing letters and requests for information after he sought counseling with the EEO.

The court must determine whether a given employment action is adverse on a case-by-case basis. *Jeffries,* 147 F.3d at 1231–32. In evaluating a claim of retaliation courts have indicated that "not everything that makes an employee unhappy is an actionable adverse action." *Dunbar v. Board of Directors of Leavenworth Pub. Library,* 996 F.Supp. 1086, 1092 (D.Kan.1998) (internal quotations omitted). "[A]n actionable adverse action is one that affects the 'terms, privileges, duration, or conditions of employment.'" *Hysten v. Jefferson County Bd. of County Comm'rs,* 995 F.Supp. 1191, 1202 (D.Kan.1998) (quoting *Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir. 1996)). "Adverse employment action has been liberally described by courts as actions by an employer that disadvantage the employee." *Ballou v. University of Kan. Med. Ctr.,* No. Civ.A. 93–2524–GTV, 1995 WL 261981, at *6 (D.Kan. Apr.7, 1995). "Examples of actionable adverse action include disciplinary demotion, termination, unjustified evaluations and reports, loss of normal work assignments, and extension of a probationary period." *Dunbar,* 996 F.Supp. at 1092–93. In addition prosecution of a former employee for suspected criminal activity may constitute adverse employment, because it can have an adverse impact on future employment opportunities. *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996). A "threatened letter of warning," however, is not an adverse employment action, as a matter of law. *Green v. Runyon,* 131 F.3d 151, No. 97–6074, 1997 WL 755270, at *1 (10th Cir.1997).

■ The record shows that defendant took adverse employment action in April 1996, when it terminated the employment of plaintiff. The letters and requests for information which preceded this termination do not constitute adverse employment action. They of themselves disadvantage plaintiff to no extent. They do not alter the terms, privileges, duration, or conditions of employment. They inquire into the reasons for plaintiff's continued absence from work. They seek to obtain current medical documentation to support an inability to work. They inform plaintiff that defendant may take adverse employment action were plaintiff to fail to provide adequate documentation. They also inform plaintiff of the status of his many pursuits of relief. The correspondence is more akin to "threatened letters of warning," than to any actionable adverse action. Any alteration of the terms, privileges, duration, or conditions of employment is speculative and prospective in nature. That the correspondence followed protected activity does not of itself transform the letters and requests into adverse employment action. Of itself the correspondence is not adverse. Only when defendant took the next step and terminated his employment did it take adverse action against him.

■ The retaliation claim of plaintiff fails at the next step of the *prima facie* case. Plaintiff has shown no causal connection between his protected activity and his termination. He has shown nothing to indicate that a retaliatory motive played a part in the adverse action. "The causal connection element requires that plaintiff establish that the protected opposition and adverse action are not wholly unrelated and such an inference is permissible where the adverse action closely follows the protected activity." *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 560 (D.Kan.1995). Nearly seventeen months elapsed between the protected activity of plaintiff and the adverse employment action of defendant. Such an interval "does not support a reasonable inference of a causal connection ... [g]iven the total dearth of other evidence of discriminatory motive." *See id.* at 560–61 (finding that an interval of eight months does not of itself give rise to a reasonable inference of a causal connection).

The correspondence from defendant between November 7, 1994, and the termination of plaintiff provides no evidence of retaliatory motive. Plaintiff contends that defendant never threatened his employment until after he exercised his federally protected rights.

The contention is erroneous. By letter dated September 21, 1994, defendant informed plaintiff that it could terminate him unless he provided adequate reason for being absent since September 5, 1994. Plaintiff alleges retaliation for exercising his federally protected rights beginning November 1994. The mere fact that defendant may have threatened termination upon the failure of plaintiff to provide sufficient documentation regarding his medical condition thus appears to be an insufficient basis to show retaliatory motive. Defendant had engaged in the same behavior prior to the protected activity of plaintiff. It had no occasion, furthermore, to threaten termination for failure to appear for work and to provide appropriate medical documentation for remaining off work, until plaintiff stopped working on September 5, 1994. Prior to that time, plaintiff had not been absent for a significant period of time.

Plaintiff has not established that his protected activity and termination were related. The temporal proximity between the two events provide an insufficient basis to infer such a causal connection. Plaintiff provides nothing else to establish the requisite connection. In the absence of a causal connection between his protected activity and subsequent termination his claim of retaliation fails as a matter of law. The court thus grants summary judgment in favor of defendant on the claim of retaliation.

For the foregoing reasons, the court sustains Defendant's Motion for Summary Judgment (doc. 26) and its Motion For Leave to File Separately Attachments to Declarations of Mark Scarborough and John Ford Submitted with Memorandum in Support of Defendant's Motion for Summary Judgment (doc. 28). The ruling on the motion for summary judgment disposes of this case in its entirety.

IT IS SO ORDERED.